UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                 :

UNITED STATES OF AMERICA,       :

                                 :                02 Cr. 442-02 (GEL)

                v.               :

                                 :              **OPINION AND ORDER**

RAFAEL POLANCO,              :

                                 :

                      Defendant.   :
-------------------------------------------------------x

GERARD E. LYNCH, District Judge:

On March 14, 2003, this Court entered judgment sentencing defendant Rafael Polanco,
then 25 years old, to 87 months' imprisonment for conspiring to distribute crack cocaine. The
sentence was imposed pursuant to the then-mandatory sentencing guidelines. The guideline
calculation was based on a finding that Polanco was responsible for the sale of approximately
388 grams of crack to a cooperating witness in a series of transactions, as well as his possession
of 656 grams of powder cocaine recovered from his apartment. (PSR ¶¶ 11-31; 3/14/03 Tr. 4.)
The guideline calculation placed Polanco at a total offense level of 29, after reductions for
acceptance of responsibility and for meeting the requirements of the statutory safety valve,
which also enabled him to avoid the otherwise mandatory ten-year sentence for selling 50 grams
or more of crack. (PSR ¶¶ 37-48). See 21 U.S.C. § 841(b)(1)(A). Because he had no known
prior convictions or arrests, Polanco had a criminal history category of I. (PSR ¶ 51.)

At the time of Polanco's sentence, the Court made clear that the length of the sentence
was entirely attributable to the severity of the crack guidelines:

> [T]he sentencing laws with respect to narcotics in this country are
> extremely severe . . . . [U]nder the sentencing guidelines I am
> restricted to imposing a sentence somewhere between 87 and 108
> months. Put another way, that [is] somewhere between 7 years-
> plus and 9 years . . . .

> Within that range, it is my conclusion the defendant should be
> sentenced at the bottom end of that range. I think that is already a
> very severe sentence. It is a tragic sentence in many respects.
> When I look at Mr. Polanco, he is a young man, everything that I
> know about him from the probation report, from the reports of his
> family members, indicates that he is not someone who has lived
> his life as some kind of gangster or someone who has himself lost
> to the world of drugs.
>
> He has been a hard-working man. He has supported his family to
> the extent he can with his employment. He has a steady record of
> employment. He has a steady record of contributing to his family.
> These are all things that I value. If I were able to impose a lower
> sentence under law, I would, but the best I can do is to give the
> lowest sentence available under the guidelines.

(3/14/03 Tr. 11-12.) The Court noted that the death of Polanco's brother and the illness of his

mother was "tragic," but that under the circumstances, these were not "extraordinary fact[s]" that

would "justify a departure from the ordinary sentence that is required to be imposed." (Id. at 12-

13.) The Court recognized that "the sentences . . . for crack in particular, . . . are extremely

severe. . . . But they are the law, they are there. This is the reality that people have to deal

with." (Id. at 14.) Immediately before imposing sentence, the Court reiterated to Polanco that

"[i]t is a terrible sentence," but "[i]t is a harsh sentence that I have to impose." (Id.)

Since that sentence was imposed, the Supreme Court and the Sentencing Commission

have changed the governing rules in ways that not only would permit the Court to impose a

different sentence were the same case to arise today, but also allow the Court to correct the

excessive sentence it was required to impose in this case. First, the Supreme Court has held that

the mandatory guidelines regime is unconstitutional, and has remedied the unconstitutionality by

rendering the guidelines advisory. See United States v. Booker, 543 U.S. 220, 245 (2005).

Moreover, that Court has also specifically noted that in sentencing under the now-advisory

guidelines, a sentencing court may take into account its view that the penalties for distributing crack are excessive in relation to those for other similar drugs.  See Kimbrough v. United States, 552 U.S. ----, 128 S. Ct. 558, 564 (2007).  Were Polanco to stand before this Court today, the Court's hands would not be tied.

Second, the Sentencing Commission has adopted a change in the crack guidelines that "reduces the base offense level associated with each quantity of crack by two levels."  Id. at 569, citing Amendments to the Sentencing Guidelines for United States Courts, 72 Fed. Reg. 28571-28572 (2007).  Were Polanco to be sentenced today, his base offense level would be 32 rather than 34, see U.S.S.G. § 2D1.1(c)(4), which would result in a final offense level of 27 and a recommended sentence of 70 to 87 months.  While the prospective change in the guidelines may be small comfort to Polanco, the Commission has also ruled that this change in the guidelines would also be applicable retrospectively, and that effective March 3, 2008, a sentencing court will be authorized to reduce the term of imprisonment for a defendant who would have received a lower sentence had the amended guideline for crack cases been in effect at the time of his sentencing.  See Sentencing Guidelines for the United States Courts, 73 Fed. Reg. 217-220 (2007).  Such an authorized reduction may be made sua sponte by the sentencing court.  See 18 U.S.C. § 3582(c)(2).

The Sentencing Commission has purported to limit the sentencing court's authority to reduce a sentence, emphasizing that, in its view, the reduction authorized by § 3582(c)(2) and the Commission's policy statement "do not constitute a full resentencing of the defendant," and prohibiting a reduction to a sentence "that is less than the minimum of the amended guideline range."  Sentencing Guidelines for the United States Courts, 73 Fed. Reg. 218.  The

effectiveness of these limitations is yet to be tested; it would be, to say no more, ironic if the relief available to a defendant who received a sentence that is now recognized to have been unconstitutional because imposed under mandatory guidelines based on non-jury fact findings and unwise because the guideline under which he was sentenced was excessively severe, can be limited by a still-mandatory guideline.

It is not likely, however, that the complex legal issues theoretically presented by the Commission's effort to extend limited relief to inmates in Polanco's situation will be tested in his case. The Commission has notified this Court that Polanco remains incarcerated, and that if his sentence is reduced as authorized by § 3582(c)(2) and the amendment to the crack guidelines, he may well be eligible for release within a matter of weeks following the March 3, 2008, effective date of the retroactivity policy. If this is so, there would be little need to explore the legality of any relief beyond that expressly authorized by the Commission's policy statement; the only question is whether the Court should grant the relief thus authorized.

Although the Court's authority to reduce Polanco's sentence does not become effective until March 3, 2008, it is not too soon for the Court to prepare to exercise that authority if appropriate, given that the sentencing transcript suggests that Polanco is a likely candidate for such a reduction, and that according to the Sentencing Commission's estimate, reduction of Polanco's sentence to 70 months might result in an expected release date of March 17, 2008. Despite Polanco's apparent eligibility for the maximum authorized reduction, it would not be appropriate for the Court to reduce a defendant's term of imprisonment sua sponte without giving the Government an opportunity to address the issue. Perhaps events since Polanco's sentencing, including but not limited to actions while incarcerated that might show him to be

4

dangerous and not rehabilitated, or information not presented to the Court at sentencing, will indicate that a reduction in sentence would not be appropriate. Similarly, Polanco himself should have the opportunity to rebut any argument made by the Government, or to submit any information of his own supporting a reduction in his sentence.

Accordingly, the Court hereby serves notice of its intention to reduce defendant Polanco's term of imprisonment to 70 months on March 3, 2008, unless good cause not to do so is shown by the Government before that time, and it is hereby ORDERED that the Government submit any opposition to such a reduction on or before February 11, 2008. Polanco may submit a response to any Government submission on or before February 25, 2008. In view of the potential urgency of the situation, these deadlines will not be extended.

SO ORDERED.

Dated: New York, New York
      January 14, 2008

                                    GERARD E. LYNCH
                          United States District Judge